[Civ. No. 46462. First Dist., Div. Two. Aug. 28, 1981.]

ALMA W., A Minor, etc., Plaintiff and Appellant, v.
OAKLAND UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

COUNSEL

Thomas V. Roland for Plaintiff and Appellant.

Stephen A. McFeely and Crosby, Heafey, Roach & May for Defendant and Respondent.

OPINION

**MILLER, J.**—This appeal arises out of a tort action seeking damages from respondent, Oakland Unified School District, for an alleged sexual assault by respondent's employee, A. B., on appellant. Appellant appeals from a judgment entered against her which sustained respondent's demurrer for failure to state a cause of action against the school district under the doctrine of respondeat superior.

Appellant alleges that on December 2, 1977, she was a student at respondent's Lazear Elementary School and that A. B. was respondent's employee. Appellant, an 11 year old, was sexually molested by A. B., a school custodian. The sexual misconduct occurred on the school premises on a Friday afternoon behind closed doors in A. B.'s custodian's office.

On January 25, 1978, through her mother as guardian ad litem, appellant filed a complaint for damages against A. B., the school principal,

and respondent, alleging, inter alia, sexual molestation and rape. Following interposition of demurrers by the school district and others, appellant filed a first amended complaint on March 14, 1978. The amended complaint sought to establish the school district's liability under the doctrine of respondeat superior for A. B.'s act of sexual molestation and rape. On October 3, 1978, the complaint was dismissed for failure to state a cause of action as to the respondent and the school principal, and judgment was entered in their favor.

On appeal, appellant raises only the issue of whether a school district may be liable for a sexual assault perpetrated by a school employee. Appellant contends that sexual assault is a foreseeable risk created by the educational enterprise which gives rise to liability of the school district under the doctrine of respondeat superior where the employee is on duty immediately before and immediately after the assault.

■ Preliminarily, we note that this case is controlled by Government Code section 815.2, which provides, in pertinent part: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." To hold a governmental employer vicariously liable for the wrongful acts of its employees, section 815.2 by its express terms requires a showing that the employee acted within the scope of his employment. ■ Whether the scope of employment issue is a question of fact or a question of law will turn on the factual background of the particular case: Where the facts of the case make it arguable whether the employee has acted within the scope of his employment, then the scope of employment issue is one properly decided by the trier of fact. However, where the facts would not support an inference that the employee acted within the scope of his employment and where there is no dispute over the relevant facts, the question becomes one of law. (*Golden West Broadcasters, Inc.* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].) Here, resolution of the scope of employment issue is proper on appeal because the facts, seen in the light most favorable to appellant, present no grounds upon which a trial court might base a finding that Bell acted within the scope of his employment.

■ The general rule of respondeat superior at common law for nongovernmental employers is the same as that set forth in the Government Code for public employers: An employer is vicariously liable for

the torts of employees committed within the course or scope of their employment. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988]; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 617-618 [124 Cal.Rptr. 143].) Accordingly, we look to the interpretation given the phrase "scope of employment" at common law to guide us in resolving the issue of whether the actions of a public employee fall within the scope of his employment.

Our division recently articulated the test for determining whether an employee's wrongful act falls within the course or scope of employment. █ "The determination as to whether an employee committed a tort during the course of his employment turns on whether or not: 1) the act performed was either required or 'incident to his duties' [citation], or 2) the employee's misconduct could be reasonably foreseen by the employer in any event [citations]." (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 520 [154 Cal.Rptr. 874].) If an employee's actions fall within the range of actions covered by either part of this two-prong test, the employer will be liable for the wrong, even though the employee has acted maliciously and intentionally. (*Id.*, at p. 521.)

In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines occupational duties broadly. The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. (*Kish* v. *California S. Automobile Assn.* (1922) 190 Cal. 246, 249 [212 P. 27].) For example, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the scope of his employment. (*DeMirjian* v. *Ideal Heating Corp.* (1954) 129 Cal.App.2d 758, 765 [188 P.2d 834].) However, that is not to say, that employers are strictly liable for all actions of their employees during working hours. If an employee substantially deviates from his duties for personal purposes, the employer is not vicariously liable for the employee's actions. (*Hinman* v. *Westinghouse Elec. Co., supra*, 2 Cal.3d 956, 960; *Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656 [171 P.2d 5]; *Golden West Broadcasters, Inc.* v. *Superior Court, supra*, 114 Cal.App.3d 947, 957; *Figone* v. *Guisti* (1919) 43 Cal.App. 606, 611 [185 P. 694].)

█ This case presents us with a factual situation where the connection between the employee's duties and the employee's wrongful action

has become so attenuated that the law will not hold the employer vicariously liable. Sexual molestation is in no way related to mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian. Though there may be those cases where personal motivations so mingle with the employee's pursuit of occupational duties that it is arguable whether the employee's action is incidental to his duties, this is not such a case. A. B.'s action, prompted by wholly personal motivations, was clearly not required or incidental to his duties as a school custodian.

Appellant's undisputed allegations that A. B. used school facilities in the commission of his offense do not convince us that A. B.'s action may have been incidental to his custodial duties. Where an employee pursues his own ends, the use of property or facilities entrusted to him by the principal is an inadequate basis for imputing liability to the employer (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 209 [30 Cal.Rptr. 253]). For example, the fact that a dry cleaning operation affords an employee a unique opportunity to pilfer items inadvertently left in customer's clothing does not render the dry cleaning company vicariously liable for the employee's theft. (*Copelin* v. *Berlin Dye Works etc. Co.* (1914) 168 Cal. 715, 719 [144 P. 961].) Similarly, the custodian's use of the janitor's office, which arguably furnished a unique opportunity for A. B's action, does not impute liability to the school district. The mere fact that an employee has the opportunity to abuse facilities necessary to the performance of his duties does not render an employer vicariously liable for the abuse.

Nor does the fact that the offense occurred during working hours make A. B.'s action incidental to his employment. Although appellant strenuously argues that the janitor's presence at his workplace and his attendance to his duties immediately before and immediately after the offense is a determinative factor in resolving the issue of scope of employment, he is unable to cite any authority for that proposition. In fact, mere presence at the place of employment before, during, or after the commission of the offense has not been a decisive factor in resolving the scope of employment issue. (*Yates* v. *Taft Lodge No. 1527* (1935) 6 Cal.App.2d 389 [44 P.2d 409]; *Figone* v. *Guisti, supra,* 43 Cal.App. 606.) If an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.

■ In attempting to establish a nexus between A. B.'s janitorial duties and his act of sexual molestation, appellant places considerable reliance on a number of decisions holding employers vicariously liable for their employees' tortious assaults on third parties: *Carr v. Wm. C. Crowell Co., supra*, 28 Cal.2d 652 (construction employee threw hammer during dispute over construction procedure); *Fields v. Sanders* (1947) 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525] (employee truck driver assaulted third party driver during dispute over truck driver's performance of his driving duties); *Hiroshima v. Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24 [63 P.2d 340] (dispute over employee's collection of employer's bill); *Pritchard v. Gilbert* (1951) 107 Cal. App.2d 1 [236 P.2d 412] (dispute between traveling salesman and passing motorist over near accident) and *Rodgers v. Kemper Constr. Co.* (1975) *supra*, 50 Cal.App.3d 608 (dispute over employee's right to use employer's equipment). None of the cases alluded to provides any support for the proposition that a sexual assault by a janitor at a public school is incidental to the janitor's duties. In each of these cases, a work-related dispute preceded the assault. While it is clear from this line of cases that an employer can be vicariously liable for an agent's intentional torts, it is equally clear from the same cases that the acts leading up to the tort must bear some relation to the employee's duties. The fundamental issue is whether the wrongful act was committed *"in the course of* a series of acts of the agent which were authorized by the principal. Of course, where the agent, for however brief a space of time, has ceased to serve his principal, he alone is responsible for his acts during the period of such cessation." (*Fields v. Sanders, supra*, 29 Cal.2d 834 at P. 839, italics added.) A. B.'s act of rape was not an integral part of a course of action on behalf of his employer, but rather an independent, self-serving pursuit wholly unrelated to his custodial duties.

■ We now turn to the second part of our inquiry: Whether the employee's misconduct was foreseeable in any event. Appellant cites the broad foreseeability test articulated in *Rodgers v. Kemper Constr. Co., supra*, as support for her argument that the rape occurred within the scope of employment. The *Rodgers* test reads as follows: "One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the

particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (*Rodgers* v. *Kemper Constr. Co., supra*, 50 Cal. App.3d 608, 618-619.) Appellant reasons as follows from the *Rodgers* decision: Given the enormity of the state educational enterprise, some employees will inevitably step aside from their duties to commit a sexual assault. Further, appellant argues, the Legislature anticipated such an eventuality in drafting Education Code sections 44425 and 45123, which attempt through screening mechanisms to safeguard the school system against those with a history of sexual offenses. Appellant concludes that the code is a tacit acknowledgement by the Legislature of the foreseeability of sexual assaults by public school employees on public school children. We believe appellant's argument stretches the *Rodgers* foreseeability standard far beyond its logical limits. While *Rodgers* establishes that the foreseeability test for respondeat superior is broader than that for negligence, the decision also limits liability to those torts which "may fairly be said to be characteristic" of the enterprise's activities. (50 Cal.App.3d at p. 618.) A quarrel among employees over the use of equipment at a construction site might fairly be considered characteristic of the construction industry. But it defies every notion of fairness to say that rape is characteristic of a school district's activities.

Nor does appellant's reference to the Education Code redeem her argument. Efforts by the California Legislature to guard against sexual assaults on public school students hardly prove that the state Legislature believed sexual molestation to be characteristic of public school employees. The fact that the Legislature has taken the action it has in no way alters the fact that sexual molestation is an *aberrational* act. Although appellant argues that the Legislature's anticipation of such an eventuality proves that sexual molestation was foreseeable, the legislative action does not in itself meet the foreseeability test that is the law of this state. The test is not whether it is foreseeable that one or more employees might at some time act in such a way as to give rise to civil liability, but rather, whether the employee's act is foreseeable *in light of the duties* the employee is hired to perform. (Rest.2d Agency (1957) § 245.) Thus, while it might be foreseeable for a school custodian to become involved in a dispute over the manner in which he swept the floors

or cleaned a classroom and for the dispute to end in someone being hit with a mop, the same statement cannot be made with reference to rape. There is no aspect of a janitor's duties that would make sexual assault anything other than highly unusual and very startling.

Reference to California's workers' compensation law lends added support to our decision today. Although the rationale underlying respondeat superior and workers' compensation are not identical, courts have frequently been guided by workers' compensation decisions in determining whether a particular act was within the scope of employment: "Under the modern rationale for *respondeat superior*, the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment. [Citation.] This must necessarily be so because the theoretical basis for placing the loss on the employer in both the tort and workers' compensation fields is the allocation of the economic cost of an injury resulting from a risk incident to the enterprise. [Citations.] Consequently, our high court has on many occasions relied upon workers' compensation cases in tort cases. [Citations.]" (*Rodgers v. Kemper Constr. Co., supra*, 50 Cal.App.3d 608, 619.) In looking to workers' compensation law, we are essentially asking whether any injuries A. B. might have incurred while engaged in the sexual molestation and rape would be compensable under workers' compensation. Necessarily, if A. B.'s conduct were within the "course and scope" of his employment as a custodian, then any injury to A. B. which occurred while these acts were in progress would be a compensable injury for workers' compensation purposes. However, to assert that A. B. would be entitled to workers' compensation benefits had he, for example, injured his back in perpetrating a rape is totally absurd. If A. B. had been injured, it would clearly not be compensable because the alleged misconduct is ipso facto not within the "course and scope of his employment." It necessarily follows that such conduct would be outside the scope of his employment under a respondeat superior analysis since the latter test is *more restrictive* than the workers' compensation standard. (*Church v. Arko* (1977) 75 Cal.App.3d 291, 298 [142 Cal.Rptr. 92].)

Distilled to its essence, appellant's argument is little more than that the risk of loss from an employee's sexual assault should fall on the school district as a means of spreading the risk to the community at large. Appellant is leaning on a slender reed. ■ The "spread the risk" concept underlying the doctrine of respondeat superior does not

mean that attribution of liability to an employer is merely a legal artifice invoked to reach a deep pocket or that it is based on an elaborate theory of optimal resource allocation. (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, 618.) Rather, the concept of spreading the risk is simply another way of saying that an enterprise should be charged with the cost of those accidents directly attributable to its activities. (See *Clark Equipment Co.* v. *Wheat, supra,* 92 Cal.App.3d 503, 520; *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, 618.) As our Supreme Court explained in *Hinman* v. *Westinghouse:* "'[T]he modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, *which as a practical matter are sure to occur* in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.'" (2 Cal.3d 956, 959-960, italics added.) Even assuming that schools are equipped, as are businesses, to absorb the costs of employees' torts in that schools are able indirectly to absorb and distribute the costs through taxation to the community at large, the rationale for vicarious liability does not justify allocating the risk of sexual assaults by a school employee to the community at large. Under the express terms of the *Hinman* rule, we invoke the doctrine of respondeat superior to indemnify only those losses which as a practical matter are sure to occur in the conduct of the employer's business. A sexual assault simply does not fall within the range of risks allocable to an employer.

██  As we have stated, the act of rape is not attributable to the school district because it is neither a required or incidental duty of a school employee, nor is it a reasonably foreseeable consequence of the educational enterprise. We will not depart from settled precedent to establish a rule that would divert limited educational funds to create a new compulsory insurance fund which would cover virtually all torts of an employee occurring during working hours at the place of employment, regardless of the extremity or personal nature of the act. The facts, construed most favorably for the appellant, will admit of no inference other than that in his rape of the appellant, A. B. stepped outside the scope of his employment.

The judgment of the superior court is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 21, 1981.