Filed 6/18/2018

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAKE NEWLAND, | B277638 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC514945) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Patrick T. Madden, Judge. Reversed with directions.

Greines, Martin, Stein & Richland, Timothy T. Coates, Edward L. Xanders, Feris M. Greenberger; Collins Collins Muir & Stewart, Brian K. Stewart, Joshua A. Cohen, Christian E. Foy Nagy, for Defendant and Appellant.

Law Offices of Martin N. Buchanan and Martin N. Buchanan; Panish, Shea & Boyle, Rahul Ravipudi, Thomas A. Schultz, Erika Contreras, for Plaintiff and Respondent.

_____

An employee driving home from work on a day that he did not have any job duties outside of the office injured a third party. After a jury trial, the trial court imposed liability on the employer based on evidence that the employee regularly used his personal vehicle for work on other days. The employer contends there was no substantial evidence to support finding that the employee was driving in the course and scope of his employment at the time of the accident, because he was not required to use a personal vehicle that day.

We agree that an employee must be driving a personal vehicle in the course and scope of his employment at the time of the accident to extend vicarious liability to an employer. Liability may be imposed on an employer for an employee's tortious conduct while driving to or from work, if at the time of the accident, the employee's use of a personal vehicle was required by the employer or otherwise provided a benefit to the employer. The evidence showed that the employee in this case was driving a routine commute to and from work on the day of the accident. He was not required to use his personal vehicle for work purposes that day, and his employer did not otherwise benefit from his use of a personal vehicle that day. The employer is entitled to judgment as a matter of law. We reverse the judgment with directions.

## FACTS

Defendant and appellant County of Los Angeles hired Donald Prigo as a deputy public defender in the early 1980s. In February 2013, Prigo lived in Long Beach and performed felony trial work from his office in the Norwalk Courthouse. The County does not expressly require deputy public defenders to provide vehicles to carry out their job duties. The minimum requirements of Prigo's job class specification were to have a valid California class C driver's license or the ability to use alternative transportation when needed to carry out job-related essential functions.

As a trial lawyer, however, Prigo needed to use his personal vehicle for several job-related tasks. He regularly made appearances in branch courts in Bellflower, Whittier, Downey, and downtown Los Angeles for arraignments, preliminary hearings, and other proceedings. He drove his car from home or from his office at the Norwalk Courthouse to attend proceedings at the branch courts, which was the most frequent use of his car for work purposes. When Prigo received an assignment at a branch court, he had three to ten days advance notice of the first hearing date in the branch court. If he could not make it to an appearance at a branch court, he could call an attorney assigned to that branch court to have the matter continued. Trials were rarely assigned to branch courts and Prigo had not had a trial in another courthouse since 2006, but he drove to the branch court if he had a trial there. It was not practical or

reasonable to use public transportation to get from the Norwalk Courthouse to the other courts that he needed to attend.

Prigo also used his car to drive to different jails as a regular part of his job. Eighty-five percent of his clients were in custody in downtown Los Angeles or in Castaic. Prigo needed to speak with them in person to establish trust and represent them properly. Public defenders can use videoconferencing from their offices to interview clients in custody, which Prigo made use of, but it was not intended to replace personal contact and a detailed interview with the client. There are interview rooms available at the Norwalk Courthouse to meet with clients. When Prigo visited a client in jail, he typically left his office in Norwalk in the early afternoon after the morning court calendar. He often drove directly home. No trains, buses, or public transportation go to the county jails within a reasonable amount of time. There was no practical alternative to driving his car.

Throughout his career as a trial lawyer, Prigo also drove his car to view crime scenes. Visiting a crime scene helped him to understand the testimony and examine the witnesses in a case. He would visit a crime scene when he was preparing for a motion or a trial. He sometimes went to a crime scene on the way to or from work, but he usually went during the work day. Typically, he left his office in Norwalk in the afternoon to visit a crime scene. He might return to the office if the location was close, but he often drove directly home.

On occasion, Prigo drove his car to the coroner's office or to meet witnesses. Witnesses normally came to Prigo's office at the courthouse to speak with him. On a few occasions, he had to drive to visit an expert witness, because the equipment used by the expert was located at his or her place of business. Public defenders use their judgment in retaining, meeting, and preparing expert witnesses. Most meetings with a client's family and friends to gather mitigation information for sentencing took place at Prigo's office, but there were a few times that he drove his car to people's homes because they could not travel. He could also apply for a paralegal's assistance in gathering mitigation evidence.

Prigo had the authority and discretion to determine when he needed to drive to a location for work. His supervisor was aware that he used his car to do his job, including going to the jails. The public defender's office reimburses attorneys for mileage when they travel between courthouses, but not for commuting to and from their own office. Prigo had submitted two or three requests for mileage reimbursement in his entire career. He used his car as a regular part of his job. If a supervisor wanted to send him outside of the Norwalk Courthouse, his car was available to him at work every day that he drove. Public defenders never had emergency work situations that required the use of a car to leave the office right away.

Prigo could not realistically do his job in Los Angeles County without a vehicle. Prigo's work as a trial lawyer was

cyclical and his workload varied, so there were months when he had an increased need to use his car for work and weeks when he did not need to use his car for work at all. He used his car an average of eight to ten days per month for work purposes. Prigo could use public transportation to commute on the days that he did not have work-related tasks outside the office. Prigo spent 95 percent of his time in the Norwalk Courthouse. Public transportation was never sufficient to do the job completely. He still needed to use his car to do his job, such as when he planned to visit a crime scene or client in jail.

Prigo first used public transportation for his commute when he lived in Rancho Cucamonga and was assigned to the public defender's office in downtown Los Angeles in 1985. He took public transportation to downtown Los Angeles from 1985 to 1996, including after he became a Public Defender Grade IV in 1988. He had a heavy caseload of felony trials and was qualified to work on special circumstances cases. The number of days per month that he took the bus varied. He knew in advance when he would need to use his car for work, so he drove to work on those days. He drove to work if he was in trial, because he might need to stay late at the office to do legal research or go somewhere to look at something that came up during trial. When he was in trial, he might work 16-hour days. Public defenders were also expected to attend educational meetings held downtown on Wednesday nights, so he often drove to

work on those days to socialize after the meeting without missing the last bus.

Prigo was living in Pasadena when he was assigned to the Norwalk Courthouse in 2006. He took a Metro rail line from Pasadena and other public transportation to reach the Norwalk Courthouse. He did not take public transportation every day, but it was a good option. Prigo still needed to use his car to perform tasks outside the Norwalk Courthouse. He knew in advance if he needed his car for work on a particular day. If he was going to another location, such as a crime scene, branch court, or jail, he would use his car to commute to work. He used the Metro system to commute until he moved to Lakewood.

In 2008, Prigo loaned his car to his son for a semester of school. A public defender named Mark DiSabatino gave Prigo a ride to and from work for two or three months. His brother-in-law lent him a truck on days that Prigo needed a vehicle. It did not occur often, but Prigo would drive his brother-in-law to work, then drive himself to the Norwalk Courthouse. In February 2013, at the time of the accident, Prigo lived in Long Beach. There was no practical public transportation from Long Beach to Norwalk. If there had been reasonable public transportation to get from Long Beach to Norwalk, he would have used it.

Prigo turned in a mileage request claim to his supervisor Anthony Patalano seeking reimbursement for six jail visits in May 2012 in a potential death penalty case. After Prigo resolved the potential death penalty case in

7

August 2012, his practice slowed down and he did not leave the office for work purposes other than appearances in branch courts. He may have visited the jails twice between August 2012 and the date of the accident in February 2013. He went to crime scenes a few times between October 2012 and the accident in February 2013. He did not have any other special circumstances cases prior to the accident.

On February 28, 2013, Prigo had six cases on calendar in the Norwalk Courthouse, including two pre-trial conferences that were noted on his personal calendar. Prigo was preparing for trial, since both cases were set to begin trial on March 19, 2013, but cases often settled at pre-trial proceedings. The first matter was scheduled for another pre-trial conference a few days later. One of the cases on calendar was a probation violation. In another, the client paid an amount to participate in a diversion program and the case was dismissed. Prigo's clients did not appear in the last two matters that he had on calendar. Prigo was working on serious felony cases, but he did not have any capital or special circumstances cases. He was not in the trial rotation. He did not use his car to drive anywhere during the work day.

Prigo left in his car after work to go home. A post office was located approximately an eighth of a mile, or a very long city block, from the Norwalk Courthouse. Prigo was turning in to the post office to mail his rent check when he hit a car driven by Kevin Vargas. Vargas was forced off the road and injured plaintiff and respondent pedestrian Jake Newland.

Prigo returned to work within a few days of the accident, but his car was not driveable.  DiSabatino drove Prigo to and from work while his car was repaired.  Prigo purchased a new car a few months later.

## PROCEDURAL BACKGROUND

On August 12, 2013, Newland filed the operative complaint for negligence against Prigo, the County, and Vargas.  The trial court bifurcated the issues for trial.  After jury selection, an eight-day trial was held to determine whether Prigo was expressly or impliedly required to use his personal vehicle for work purposes.

The trial court denied the County's request for jury instructions on vicarious liability, including CACI No. 3700 (introduction to vicarious liability), CACI No. 3701 (essential elements of tort liability against a principal), and CACI No. 3703 (essential elements of tort liability against a principal when employment relationship is not in dispute).  Each of the rejected instructions required the jury to find that Prigo was acting in the course and scope of his employment when the accident occurred.  The County objected to the trial court's denial of these instructions.

The County had also requested standard jury instructions based on CACI No. 3723 (substantial deviation) and CACI No. 3725 (the vehicle use exception to the going-and-coming rule).  The trial court ruled that a combined instruction based on CACI Nos. 3723 and 3725 would be

given, followed by a special instruction proposed by Newland.  The County objected to the combined instruction and Newland's special instruction.  At the end of the presentation of evidence, the trial court granted Newland's motion for a directed verdict on the defense of substantial deviation, and the related instruction on substantial deviation was deleted.

The sole instruction provided to the jury on vicarious liability was in the language of CACI No. 3725 as follows: "In general, an employee is not acting within the scope of employment while traveling to and from the workplace[.] But if an employer requires an employee to drive to and from the workplace so that the vehicle is available for the employer's business, then the drive to and from work is within the scope of employment.  The employer's requirement may be either express or implied.  [¶] . . . [¶] The drive to and from work may also be within the scope of employment if the use of the employee's vehicle provides some direct or incidental benefit to the employer.  There may be a benefit to the employer if:  [¶] One, the employee has agreed to make the vehicle available as an accommodation to the employer, and, [¶] two, the employer has reasonably come to rely on the vehicle's use and expects the employee to make it available regularly.  [¶]  The employee's agreement may be either express or implied."

The County proposed several special verdict forms, including one which asked, "When the accident occurred on February 28, 2013, was Defendant Donald Prigo acting

10

within the course and scope of his employment?" The trial court refused to give any of the County's special verdict forms. The court stated that whether Prigo was acting within the course and scope of his employment at the time the accident occurred was not an issue in the case. Instead, the court selected the special verdict form supplied by Newland. Newland's form asked simply, "Was Donald Prigo expressly or impliedly required to use his personal vehicle to perform his job for Defendant County of Los Angeles?" If the jury answered no, the form asked, "Did the County of Los Angeles directly or indirectly benefit from Donald Prigo's use of his personal vehicle?" The County objected to Newland's special verdict form because it did not include the relevant time frame or ask the jury to determine whether Prigo required his car as of February 28, 2013.

The jury answered the first question on the verdict form in the affirmative: it found that Prigo was required to use his personal vehicle to perform his job for the County. In the second phase of the trial, the jury found that Prigo's negligence caused the accident and awarded damages to Newland totaling $13,935,548. On June 23, 2016, the trial court entered judgment in favor of Newland and against the County in the amount of $13,935,548.

The County filed a motion for judgment notwithstanding the verdict on several grounds, including that there was insufficient evidence to support the vehicle use exception to the going and coming rule, and the special verdict form in the first phase of trial failed to dispose of all

11

issues in controversy.  The County also filed a motion for a new trial.  The trial court denied both motions.  The County filed a timely notice of appeal from the judgment and the postjudgment order denying judgment notwithstanding the verdict.  The County filed a separate notice of appeal from a postjudgment order awarding costs to Newland.  The appeals have been consolidated for all purposes.

## DISCUSSION

### Standard of Review

"'The trial court's power to grant a motion for judgment notwithstanding the verdict is the same as its power to grant a directed verdict.  (Code Civ. Proc., § 629.)  "A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." [Citations.]  On appeal from the denial of a motion for judgment notwithstanding the verdict, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict.  [Citations.]  If there is, we must affirm the denial of the motion.  [Citations.]' (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138; accord, *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 ['As in the trial court, the standard of review is whether any substantial evidence—contradicted or

uncontradicted—supports the jury's conclusion.'].)  For evidence to be substantial, it must be of ponderable legal significance, reasonable, credible, and of solid value.  (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)  The 'focus is on the quality, not the quantity, of the evidence.'  (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.)  We resolve all evidentiary conflicts and indulge all reasonable inferences in support of the judgment.  (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308.)"  (*Jorge v. Culinary Institute of America* (2016) 3 Cal.App.5th 382, 396 (*Jorge*).)

**Vicarious Liability for Accident During Commute**

The County contends there is no evidence that Prigo was driving his car within the course and scope of his employment when the accident occurred.  We agree.  In order for Prigo's commute to come within the course and scope of his employment, the County must have required him to drive his car or otherwise benefitted from Prigo having his car available for work purposes that day.  There is no evidence that Prigo was commuting in his car at the time of the injury because the County required him to have his car available, or that his commute provided any other benefit to the County that day.  The evidence is insufficient to support the judgment.

13

## A. Rationale for Respondeat Superior

Under the doctrine of respondeat superior, an employer is vicariously liable for an employee's tortious conduct within the scope of employment. (*Jorge, supra,* 3 Cal.App.5th at p. 396.) The employer is liable not because it controls the employee's actions or has any fault, "but because the employer's enterprise creates inevitable risks as a part of doing business. [Citations.]' [Citation.]" (*Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 94.) ""The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.'" (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959–960 (*Hinman*), quoting Prosser, Law of Torts (3d ed. 1964) p. 471; accord, *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 304 [policy goals of the doctrine are 'preventing future injuries, assuring compensation to victims, and spreading the losses caused by

an enterprise equitably']; *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 ['central justification for respondeat superior' is that 'losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business'].)" (*Jorge, supra,* 3 Cal.App.5th at pp. 396–397.)

## B. No Liability for Commute

An employee's commute to and from the workplace is generally not considered to be within the course and scope of employment. "While an employer's vicarious liability for the torts of its employees is well established, courts have recognized that an employee's commute 'to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for [the employee's] torts' committed during the employee's commute. (*Hinman, supra,* 2 Cal.3d at p. 961; *Anderson v. Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 258 (*Anderson*) [employee is not acting within the scope of employment when going to or coming from his or her place of work]; *Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1481 (*Tryer*) [employer is generally not responsible for torts committed by an employee who is going to or coming from work].) This rule, commonly referred to as the 'going and coming rule,' is grounded in the notion that "'the employment relationship is 'suspended' from the time the employee leaves until he returns [citation],

15

or that in commuting he is not rendering service to his employer.'" (*Tryer, supra,* 9 Cal.App.4th at p. 1481, quoting *Hinman, supra,* 2 Cal.3d at p. 961; *Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 162 [employee is not ordinarily rendering a service to the employer while commuting]; *Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 602 (*Blackman*) ['employment relationship is suspended from the time the employee leaves his place of work until he returns'].)" (*Jorge, supra,* 3 Cal.App.5th at p. 397.)

### C. Required Vehicle Exception

There are exceptions to the going and coming rule which hold an employer liable for an employee's conduct during his or her commute. (*Hinman, supra,* 2 Cal.3d at p. 962.) Exceptions are made "where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Id.* at p. 962; *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 (*Hinojosa*).) "[T]his means not just any trivial benefit to the employer, but a benefit 'sufficient enough to justify making the employer responsible for the risks inherent in the travel.' (*Blackman, supra,* [223 Cal.App.3d] at p. 604.)" (*Jorge, supra,* 3 Cal.App.5th at pp. 397–398.)

The California Supreme Court recognized the required vehicle exception to the coming and going rule in *Smith v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 (*Smith*),

holding that an employee is acting in the course of employment during his or her commute when the employer requires the employee to bring a car to work. The employee in *Smith* was a county social worker who was killed in a car accident while driving to work. (*Id.* at p. 815.) The evidence showed that the social worker was required to have a car available for client visits on field days and for emergency visits on regular office days. (*Id.* at p. 816.) If an employee's car was unavailable, the county would provide a car on request, but the social worker had never requested the use of a county car. (*Ibid.*) This evidence compelled finding that the employer required the employee to bring his car to work on the morning of the accident. (*Ibid.*)

The *Smith* court noted that an employee "'is performing service growing out of and incidental to his employment' (Lab. Code, § 3600)" under the worker's compensation statutes when the employee "engages in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage of the employer." (*Smith, supra,* 69 Cal.3d at pp. 819–820.) The court concluded that a requirement to provide a car for work purposes limited the going and coming exclusion. (*Id.* at p. 820.) The employment relationship resumes "when the employer requires that the employee engage in conduct, whether prior to the workday or after it, whether on the premises of that employer or away from them, that inures to the benefit of the employer." (*Ibid.*) "[T]he employer instructed [the employee] to have his car

17

available on the job every morning. In driving the car to and from work, [the employee] carried out this order in a reasonable and normal manner, acquiesced in by his employer. Accordingly, even though [the employee's] employment contract said nothing about the manner of his transit to the job, he nevertheless acted within the course of his employment in thus furnishing his own car." (*Id.* at p. 821.)

Similarly in *Hinojosa, supra,* 8 Cal.3d 150, the Supreme Court found the going and coming rule did not bar recovery, because the employer required employees to provide vehicles for transportation at work every day. Hinojosa worked as a farm laborer. (*Id.* at p. 152.) When employees finished work at one ranch, the foreman assigned the workers to another ranch operated by the same employer. On any particular day, Hinojosa did not know in which field he would be working or the duration of the work to be done on that field. (*Ibid*.) Because of the nature of the work, employees were required to provide their own vehicles for transportation between fields during the work day. (*Ibid*.) Hinojosa did not own a car, so he paid another worker for transportation. (*Id.* at pp. 152–153.) He was injured in an accident on the commute home. (*Id.* at p. 153.)

The Supreme Court distilled a formula from the case law to determine whether the coming and going rule applied in worker's compensation cases. Injuries were non-compensable when they occurred "during a local commute enroute to a fixed place of business at fixed hours in the

18

absence of special or extraordinary circumstances. The decisions have thereby excluded the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work." (*Hinojosa*, *supra*, 8 Cal.3d at p. 157.) In contrast were "extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own. When the employer gains that kind of particular advantage, the job does more than call for routine transport to it; it plays a different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice or convenience and place it within the ambit of the employer's choice or convenience, restoring the employer-employee relationship." (*Ibid.*) In cases where an employee was expressly or impliedly required to bring a means of transportation to the job, "'the obligations of the job reach out beyond the premises, making the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding. Since this is the theory, it is immaterial whether the employee is compensated for the expenses of the trip.' (1

19

Larson, The Law of Workmen's Compensation [(1968)] § 17.50.)" (*Id.* at p. 160.)

Based on the facts of *Hinojosa*, the court held: "[T]he instant case clearly differs from the normal routine commute; it is instead the extraordinary situation in which the job is structured, and dependent upon, transportation from one place of work to another so that the use of an instrument of such transportation is a requisite of employment. The employer could have provided, at his own expense, company vehicles to transport the workers between his various farms during their workday. His failure to do so made it necessary for the workers to supply their own on-the-job transportation. Thus [Hinojosa] made use of the car from his residence to the first ranch, and thereafter from ranch to ranch and finally from ranch to his residence because the car was an essential requirement of the job; the presence of the car was requisite to performance of the job; the worker was impliedly required to bring the car to the job and to take it from the job. Thus the injury suffered in the car was covered by the Workmen's Compensation Act." (*Hinojosa, supra,* 8 Cal.3d at p. 162.) Hinojosa's injuries as a passenger in the vehicle were compensable because he was required to supply a vehicle for work, and employees who are injured in the same car accident under identical employment circumstances are not treated differently based on the ownership of the car. (*Id.* at p. 162.)

The test for liability under worker's compensation law, which requires finding "at the time of the injury, the

employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" (Lab. Code, § 3600, subd. (a)(2)), is not identical to the test for liability under the respondeat superior doctrine based on "scope of employment." (*Hinman, supra,* 2 Cal.3d at p. 962, fn. 3.) The tests are closely related, because they both consider the benefit to the employer and the allocation of risk for industrial injuries. (*Ibid.*) Worker's compensation provisions are construed liberally, however, to protect employees, and courts have been generous in finding injured workers entitled to benefits. (*Jorge, supra,* 3 Cal.App.5th at pp. 398–399, fn. 7.) Although California courts look to worker's compensation cases for guidance, the scope of employment for imposing vicarious liability is more restrictive in tort claims based on the differing policy considerations. (*Ibid.*)

Courts have applied the required vehicle exception to hold an employer vicariously liable when the facts show an employee was required to bring a car to work every day or on the day of the accident. In *Hinman, supra,* 2 Cal.3d 956, an employee's contract required the employer to pay "carfare" and travel time under certain circumstances, depending on the location of the job site. (*Id.* at p. 959.) The employee injured a third party on his way home from a job site which qualified for the payment of travel time and expenses. The *Hinman* court reasoned that paying travel time and expenses allowed the employer to locate its enterprise at a remote place and enlarge the available labor market, but it

21

also increased the risk of injury during transportation. (*Id.* at p. 962.) The court concluded that when travel time is part of the working day by contract, "the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable." (*Ibid.*) Since the employee injured the third party during paid travel time, the employer was vicariously liable as a matter of law. (*Id.* at p. 963.)

The required vehicle exception was similarly applied in *Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803 (*Huntsinger*), when an employee was required to bring a car to work every day to have it available for work purposes. Service representative Edward Fell had daily contact with customers "not only by telephone but in person at the customers' plants as the need arose. Thus, Fell performed his duties both in the company office and in the field. Many of his field trips were unplanned and unpredicted. He was not required to punch a timeclock at the office, nor was he required to sign in or out." (*Id.* at p. 806.) On the day of the accident, Fell drove his car from his office to a customer's plant and back to the office. While driving home from the office later that day, he killed a motorcyclist. The court reasoned that "ordinary members of [an employer's] work force would not be required to use their vehicles in company business and would not, therefore, be required to drive their vehicles to and from work. The means by which they travel to and from work is a matter of complete indifference to [the

employer].'' (*Id.* at p. 810.)  When an employer requires an employee to have a personal vehicle available at work, however, the employee's commute to and from the workplace in that vehicle is "incidentally beneficial to [the employer] in a manner not common to commute trips by ordinary members of its work force.  In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise." (*Ibid.*)  The appellate court concluded there was substantial evidence from which a jury could find that "Fell was acting within the scope of his employment at the time of the accident." (*Ibid.*)

The required vehicle exception may apply when an employee is required to bring a car daily to have it available for work, even if the employee rarely has to use the car for work purposes.  In *Lobo v. Tamco* (2010) 182 Cal.App.4th 297 (*Lobo I*), the appellate court reversed a summary judgment in favor of employer Tamco, concluding there was a triable issue of material fact as to whether the required vehicle exception applied.  Tamco employee Luis Duay Del Rosario was commuting home when he killed a deputy sheriff.  (*Id.* at pp. 299, 301.)  The plaintiff presented evidence that Del Rosario's job description required him to answer customer complaints, and if necessary, to visit

23

customer sites.  (*Id.* at pp. 301–302.)  Tamco did not provide a company car.  Del Rosario usually rode in a sales engineer's car to a customer site, but he occasionally used his own car if no sales engineer was available.  (*Id.* at p. 302.)  During the 16 years that he worked at Tamco, he used his own car to visit customer sites no more than 10 times and had been reimbursed for expenses.  (*Ibid.*)  Del Rosario was on his way home when he left Tamco on the day of the accident, but he would have used his car to visit a customer site if he had been asked.  (*Ibid.*)

The *Lobo I* court found the evidence "clearly sufficient to support the conclusion that Tamco requires Del Rosario to make his car available whenever it is necessary for him to visit customer sites and that Tamco derives a benefit from the availability of Del Rosario's car."  (*Lobo I*, *supra*, 182 Cal.App.4th at p. 302.)  The frequency of the employee's use of the personal vehicle was not determinative.  Instead, the issue depended on "whether the employer expressly or implicitly required the employee to make the vehicle available or has reasonably come to expect that the vehicle will be available for work purposes and whether the employer derived a benefit from the availability of the vehicle.  [Citations.]  If the employer requires or reasonably relies upon the employee to make his personal vehicle available to use for the employer's benefit and the employer derives a benefit from the availability of the vehicle, the fact that the employer only rarely makes use of the employee's personal vehicle should not, in and of itself, defeat the

24

plaintiff's case. Here, [Del Rosario's supervisor] testified that Tamco required Del Rosario to make his car available rather than providing him with a company car in part *because* the need arose infrequently. Thus, the availability of Del Rosario's car provided Tamco with both the benefit of insuring that Del Rosario could respond promptly to customer complaints even if no sales engineer was available to drive him to the customer's site and the benefit of not having to provide him with a company car. Based on this evidence, a reasonable trier of fact could find that the 'required-vehicle' exception does apply." (*Id.* at p. 303.)[1]

Courts have declined to apply the required vehicle exception when evidence showed the employee was not required to drive a personal vehicle to work on the date of the accident, even when the employee had used the vehicle for work purposes at other times. In *Ducey v. Argo Sales Co.*

---

[1] We note that on remand, the jury found the required vehicle exception did not apply. (*Lobo v. Tamco* (2014) 230 Cal.App.4th 438, 440–441 (*Lobo II*).) Del Rosario's supervisor had stated in deposition testimony that Del Rosario was required to make his personal car available to visit customer sites whenever the need arose, which was sufficient to create a triable issue of fact in *Lobo I*. (*Id.* at p. 444.) At trial, the supervisor stated his deposition testimony was in error. Tamco did not rely on Del Rosario making his car available and did not receive any benefit if Del Rosario used his own car to visit a customer's site. (*Id.* at pp. 444–445.) The *Lobo II* court found substantial evidence supported the judgment in favor of Tamco. (*Id.* at p. 441.)

(1979) 25 Cal.3d 707, the Supreme Court found employee Dolores Glass was not required to use her personal vehicle as a condition of her employment, and therefore, was not acting in the course and scope of her employment at the time that she was involved in a car accident. (*Id.* at p. 721.) Glass cleaned model homes in San Jose, Alameda, and Union City. She drove from her home to the model homes, which were up to 45 miles away, several days per week. Glass was returning home from cleaning a model home when she was involved in an accident. The Supreme Court concluded, "The evidence does not establish as a matter of law that the company required Glass, as a condition of her employment, to commute to work in her personal car. The job was not one that embraced driving, and Glass was not required to use her vehicle for field work. Although there was evidence that she occasionally ran errands for her employer, these trips were not conclusively shown to be a condition of her employment. The jury could reasonably have believed that Glass was acting as a volunteer in running occasional errands for replacement items. She was not engaged in such an errand at the time of the accident. There is no evidence that Glass was required to go from location to location during the day. [Citation.]" (*Id.* at p. 723.)

In *Jorge, supra*, 3 Cal.App.5th 382, the appellate court refused to impose liability on an employer for an accident that occurred during an employee's commute home from his regular work duties, even though there was evidence that

26

the employee frequently drove his personal vehicle in connection with extraordinary work duties.  In the trial court, the jury found employee Almir Da Fonseca to be acting in the scope of his employment for the Culinary Institute of America when he struck pedestrian Jorge on his drive home.  (*Id.* at p. 387.)  In reversing the judgment, the appellate court acknowledged extensive evidence that Da Fonseca drove his personal vehicle to and from off-campus commitments, but the court declined to hold the Institute vicariously liable for an accident that occurred when he was simply commuting from his regular work site.  (*Id.* at pp. 402–403.)  Da Fonseca's primary job duty as a chef instructor for the Institute was to teach courses.  (*Id.* at p. 388.)  He drove his personal car to work at the Institute, but he could have carpooled, gotten a ride, or taken public transportation.  (*Id.* at p. 389.)  In addition to regular classes, Da Fonseca taught specialized classes.  Chef instructors could assist with events, conferences, and retreats.  The instructors who could travel, including Da Fonseca, provided consulting services.  They provided consultation services at the Institute or the client's business.  In addition, Da Fonseca conducted research in Brazil for several weeks.  The Institute paid his salary while he was in Brazil and promoted his findings.

The Institute paid for Da Fonseca's travel time when a trip involved a substantial amount of travel, and paid for mileage when he drove to work locations away from the Institute.  (*Jorge, supra,* 3 Cal.App.5th at p. 392.)  For

27

consulting locally, a chef instructor could rent a car, take public transportation, carpool, or take a personal vehicle. (*Id.* at p. 392–393.) If the travel required taking a flight, Da Fonseca drove to the airport or got a ride from his wife. Da Fonseca used his car on many occasions to get to jobs away from the Institute. (*Id.* at p. 393.) The Institute also provided jackets and paid for dry cleaning at a particular dry cleaner. (*Id.* at 395.) On the day of the accident in *Jorge*, Da Fonseca drove to the Institute, taught classes, and drove home with a few dirty chef's jackets and a set of knives in the car. (*Id.* at p. 388.) He did not intend to go to the dry cleaner that day.

Based on this evidence, the *Jorge* court found that "Da Fonseca did not need a car for any purpose on the days he fulfilled his regular chef instructor duties at the St. Helena campus. He testified that he commuted from home to the campus and back in his car as a matter of convenience, but he could have taken public transportation, carpooled, or been dropped off." (*Jorge, supra,* 3 Cal.App.5th at p. 402.) "[E]ven if there were substantial evidence that Da Fonseca was impliedly required to drive his car to off-campus events or that he agreed to make his car available for off-campus events as an accommodation to the Culinary Institute and the Institute came to rely on it—which there was not—there is no authority holding that such evidence took Da Fonseca's ordinary commute to and from the St. Helena campus outside the going and coming rule. In short, the accident here occurred when Da Fonseca was simply commuting

28

home from a day of performing his regular duties as a chef instructor at the St. Helena campus, a commute that lacked any imaginable connection to the performance of his duties at the Culinary Institute." (*Id.* at p. 406.)

## D. Application of the Vehicle Use Exception

In order to apply the vehicle use exception to the coming and going rule in this case, Newland had to show that (1) the County required Prigo to drive his car to and from the workplace at the time of the accident, or (2) Prigo's use of his car provided a benefit to the County at the time of the accident. A benefit to the County may be found if at the time of the accident, Prigo agreed to make his car available, the County reasonably came to rely on Prigo's use of the car, and the County expected Prigo to make it available. There was no evidence in this case to support finding a job requirement or a benefit to the County on the day of the accident.

First, there was no evidence to support that Prigo was required to drive to or from work on the date of the accident. Prigo was required to drive his car to perform several of his job duties outside the office, including appearances in branch courts, visits to the jails, viewing crime scenes and meeting witnesses. However, he did not have to perform these duties every day. He knew in advance when he had tasks outside the workplace for which he needed his car. When he had reasonable alternatives to driving and did not have tasks

29

scheduled outside the workplace, he used public transportation to commute to work. If reasonable public transportation had been available from his home in Long Beach, he would have used it. He did not have any job duties outside the workplace scheduled for the day of the accident, and he did not use his car for work purposes that day. Prigo never had emergency situations that required the use of his car during the day for work, except when he was in trial. In short, he did not need his car for work purposes on the day of the accident. Prigo was driving a normal, routine commute at the time of the accident from a fixed place of business to home. (*Hinojosa, supra*, 8 Cal.3d at p. 157.) He could have carpooled, been dropped off, or taken public transportation if it were available. Prigo's conduct in driving to and from work on the day of the accident was not "reasonably directed toward the fulfillment of his employer's requirements" or "performed for the benefit and advantage of the employer." (*Smith, supra*, 69 Cal.2d at pp. 819–820.) It was not an extraordinary situation in which his work depended upon transportation from one place of work to another. There was no evidence to support finding that the County directly or indirectly required Prigo to drive to work on the day of the accident in order to have his car available for the County's business.

Second, Newland contends that the case should be remanded to consider whether Prigo's use of his car provided a direct or incidental benefit to the County. There is no evidence, however, to support finding that the County

30

received any benefit from Prigo's use of his car at the time of the accident. A trier of fact could certainly conclude from the evidence that when Prigo had job duties outside the workplace, he made his car available as an accommodation to the County, and the County reasonably came to rely on Prigo's use of his vehicle to complete those tasks. There was no evidence, however, that the County relied on or expected Prigo to make his car available on days that he did not have outside tasks. In fact, the evidence was that Prigo commuted to work for years by bus, Metro train, and carpool on days that he did not have any duties outside the workplace. When Prigo drove his car, it was available to him for work purposes. But Prigo had discretion to determine when he needed to drive to a location for work, and he knew in advance when he needed a car for work purposes. He did not have emergencies that required him to immediately perform job duties outside the workplace, and there was no evidence that he had ever been directed to immediately perform a task. There is no evidence to support finding that the County received a benefit from the availability of Prigo's car on the day of the accident. Since Prigo was not required to drive to work on the day of the accident, and his use of his car that day did not otherwise provide a benefit to the County, there was no evidence to support finding that Prigo was driving in the course and scope of his employment when he injured Newland.

The facts of *Smith*, *Hinojosa*, *Hinman*, *Huntsinger*, and *Lobo I* are distinguishable, because in each of those cases,

31

the employee was required to drive to work on the day of the accident or was providing a benefit to the employer every time that the employee had a car available at work. In contrast, Prigo was not required to drive his car every day or on the day of the accident, and his use of his car that day did not provide a benefit to the County.

Our conclusion that an employee must be driving in the course and scope of employment at the time of the accident for the vehicle use exception to apply is supported by the language of the worker's compensation statute from which it was derived in *Smith*. Labor Code section 3600, subdivision (a)(1) provides that an employee must have been acting within the course of his or her employment "at the time of the injury" to be entitled to compensation. CACI instructions on vicarious liability and the tort liability of a principal also require finding an employee was acting in the course and scope of employment when the accident occurred. (CACI No. 3700 [introduction to vicarious liability]; CACI No. 3701 [essential elements of tort liability against a principal]; CACI No. 3703 [essential elements of tort liability against a principal when employment relationship is not in dispute].)

The policy factors underlying the doctrine of respondeat superior do not dictate its application in this case. "Those policy factors are '(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit

32

from the enterprise that gave rise to the injury.' [Citation.] These factors do not constitute the legal standard for respondeat superior liability, but they provide guidance to the courts in considering whether the doctrine should be applied. [Citation.]" (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 296 (*Kephart*).)

Holding the County liable on the facts of this case would not prevent recurrence of the tortious conduct. For example, if the County provided vehicles for public defenders to use during the workday for their duties outside the office, it would not reduce the occurrence of this type of accident, because Prigo did not require a vehicle at work on the day of the accident, he did not have emergencies at work that required the use of a vehicle immediately, and his commute that day was not related to his work duties outside the office. He drove to the Norwalk Courthouse on the day of the accident because he did not have any reasonable public transportation options from Long Beach.

"From the perspective of a plaintiff, imposition of vicarious liability would always serve the policy of giving greater assurance of compensation to the victim. But respondeat superior liability is not 'merely a legal artifice invoked to reach a deep pocket or that it is based on an elaborate theory of optimal resource allocation.' (*Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 143–144.) The second and third policy factors are inextricably bound together (*Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1610; *Alma W. v. Oakland Unified School*

33

*Dist., supra,* 123 Cal.App.3d at pp. 143–144) and vicarious liability is invoked to provide greater assurance of compensation to victims in circumstances where it is equitable to shift losses to the employer because the employer benefits from the injury-producing activity and such losses are, as a practical matter, sure to occur from the conduct of the enterprise. (*Le Elder v. Rice, supra,* 21 Cal.App.4th at p. 1610; *Alma W. v. Oakland Unified School Dist., supra,* 123 Cal.App.3d at p. 144.)" (*Kephart, supra,* 136 Cal.App.4th at p. 297.)

Prigo's accident during his commute on a day that he did not need his car for work purposes was no more likely to occur from the County's enterprise than other fixed places of business in the conduct of their enterprise. The County did not derive any benefit from Prigo's conduct at the time of the accident. Public policy does not support imposing liability on the County for the tortious conduct of an employee who was not driving in the course and scope of his employment at the time of the accident.

There was no evidence that Prigo required a vehicle for work on the day of the accident, and no evidence that the County received any direct or incidental benefit from Prigo driving to and from work that day. It was error to deny the motion for judgment notwithstanding the verdict, and the judgment must be reversed.

## DISPOSITION

The judgment and the order denying the County's motion for judgment notwithstanding the verdict are reversed. The trial court is directed to enter a new and different order granting the motion for judgment notwithstanding the verdict. Respondent County of Los Angeles is awarded its costs on appeal.


KRIEGLER, Acting P.J.

I concur:



KIM, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Jake Newland v. County of Los Angeles
B277638


BAKER, J., Dissenting


Sufficiently regular use of a personal vehicle for travel to perform employment duties, where it confers a substantial incidental benefit on an employer, can properly support application of the vehicle-use exception even if the vehicle was not required for such duties "at the time of the accident," as the majority today holds. (*Lobo v. Tamco* (2010) 182 Cal.App.4th 297, 302-303 [evidence that "[d]uring 2005, the year of the accident, [the employee] visited customer sites [using his own car only] five times or fewer" is sufficient to support a conclusion the vehicle use exception applies even though the employee's accident occurred during his commute home on a day the vehicle was not needed for the employer]; see also *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 723 [mere fact that employee was not engaged in an errand for the employer on the day of the accident not treated as dispositive; Court further relies on facts showing the employee's "occasional[ ]" errands for her employer "were not conclusively shown to be a condition of her employment" to hold the vehicle use exception inapplicable]; *Zhu v. Workers' Comp. Appeals Bd.* (2017) 12 Cal.App.5th 1031, 1041 ["[employee's] transit bestowed a direct benefit on

[employer], as [employer] knew that [employee] had to transit between homes to service more than one home a day"]; compare, e.g., *Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 629 ["*Hinojosa* [*v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150] . . . is factually distinguishable because the moves from field to field occurred *regularly* during the course of the workday.  In this case, the moves were not regular and, as a result, [the employee] did not regularly make his vehicle available to transport crew members to a new drilling site"].)

Even assuming the majority's analysis of the express or implied requirement justification for applying the vehicle-use exception is sound on the facts here, it is still the case that the jury never reached the question of vicarious liability on a direct or incidental benefit theory of liability.  (See, e.g., CACI No. 3725 ["The drive to and from work may *also* be within the scope of employment if the use of the employee's vehicle provides some direct or incidental benefit to the employer"], italics added.)  There is substantial evidence that would support (but certainly not compel) liability on that theory, and I therefore dissent from the holding that directs the trial court to grant judgment notwithstanding the verdict for the County of Los Angeles.


BAKER, J.