[Civ. No. 15878.   Second Dist., Div. One.   Jan. 28, 1948.]

GEORGE DeMIRJIAN et al., Appellants, v. IDEAL HEATING CORPORATION (a Corporation), Respondent.

Pearlson & Singer for Appellants.

John W. Preston and Morris Bordon for Respondent.

WHITE, J.—This is an appeal by plaintiffs from an adverse judgment in an action for unlawful detainer. Plaintiffs are the successors in interest of the original lessors, who leased certain real property in the city of Los Angeles to defendant corporation for a period of five years with an option to renew for an additional five years, which option the defendant exercised. On April 12, 1946, while the lease was in force under the renewal and the defendant was in possession, the premises were damaged by fire, whereupon the plaintiffs, purporting to act under the provisions of the lease, demanded that defendant surrender possession and made a tender of unearned rent. Possession being refused, this action was commenced.

Paragraph 16 of the lease reads in part as follows:

"Should said premises, or the building of which they are a part, be wholly destroyed by fire or other calamity; or be so greatly damaged during the first five (5) years of this lease that they may not be put in their former state of repair for less than fifty per cent of the fair value thereof immediately prior to such fire or other calamity and within thirty working days thereafter; . . . then, upon tendering to Lessee all unearned rental heretofore paid Lessors by it, calculated at a daily rate based on the regular monthly rate, Lessors may forthwith terminate this lease, and re-enter and take possession of said premises and remove all persons therefrom. However, in the event of such partial destruction, other than during said last twelve months of the term hereof, and if such restoration may be made at less expense than said fifty per cent of the fair value thereof immediately prior to such fire or other calamity, and within said thirty working days, or should said premises or building be less than fifteen per cent damaged during the last

twelve months of said term, then Lessors shall with reasonable diligence effect such restoration and redeliver said premises to Lessee under the provisions hereof and during the time required for restoration a like proportion, to that portion of the premises damaged or destroyed, of rental to be paid by Lessee hereunder shall be rebated or abated to it. . . . *It is agreed that unless the parties to this lease can and do agree forthwith upon the extent and amount of damages and the time required for repair and restoration, Lessors shall promptly designate a certified architect of the City of Los Angeles who shall determine the extent and amount of the damages and the time required for repair and restoration and whose determination shall be final and binding upon the parties to this lease; provided, always, however, that the architect so appointed must be responsible, experienced, and as regards both Lessors and Lessee, disinterested.*"

By their complaint plaintiffs alleged that the lease had "become terminated, voided and nullified by reason of the said premises being approximately eighty-five per cent (85%) destroyed by fire as provided and set forth and caused as stated in Paragraph 16 of said lease. . . ." The complaint contained no allegation as to the appointment of an architect to determine the extent of the damage, as provided for in the last sentence of paragraph 16 of the lease. By its amended answer defendant denied that the premises were 85 per cent destroyed and alleged that the damage amounted to less than 30 per cent of the fair market value of the premises immediately prior to the fire, and also that the premises could be restored within 30 working days immediately following the fire. By a separate defense defendant alleged that the parties failed to agree upon the extent of the damage or the time required to repair; that plaintiffs failed to appoint an architect as required by paragraph 16 of the lease and that no determination of the damage and the time required to restore the premises was made prior to the commencement of the action.

The trial court found that the partial destruction "was in an amount of less than 50% of the reasonable value of said premises at the time of the fire" and that "said premises can be repaired to its condition immediately before the fire within thirty working days from the date of the fire"; and that "it is untrue that the lease referred to in plaintiffs' complaint has become terminated, voided and nullified by reason of the provisions contained in Paragraph 16."

■ Appellants contend that they have complied with the provisions of paragraph 16 providing for the appointment of an architect to determine the extent of the damage, and that his determination, in the absence of fraud or undue influence, is conclusive. Respondent contends that under the evidence, the architect designated by the lessors made no such determination of extent of damage or time required for repair as is required by the lease. Respondent's contention, in our view, is well taken, and is determinative of the case.

The fire took place on April 12, 1946. On April 15, 1946, plaintiffs served upon defendant a notice of termination of the lease upon the ground that the building was damaged more than 50 per cent of its fair value and could not be repaired within 30 working days. The notice contained no reference to designation of an architect. Defendant replied on April 18, stating that ''The Ideal Heating Corporation disagrees with your conclusions'' as to the extent of the damages, refusing to accept the tender of unearned rent, and demanding that lessors take immediate measures to restore the building. The action was commenced May 16, 1946.

At the trial, plaintiffs produced as a witness Mr. Saunders, a certified architect, who testified that he had designed the building in question six or seven years previously; that he examined the building a week or ten days after the fire, and on April 24, sent to plaintiffs a written report, as follows:

''In response to your request for an estimate of the percentage of fire damage to the Ideal Heating Company at 807 East Gage, I would estimate the damage at 75%.''

Mr. Saunders further testified as follows:

''I had no idea that I was doing anything more than adjusting insurance. . . . I supposed it was for insurance. I didn't ask particularly about it. . . . I went down with Mr. Koll to see the building and I supposed in the first place I was going simply to replace the building and *I knew of no controversy*. . . . I didn't appreciate that there was any different objective than the insurance. . . . (On cross-examination) I have very little recollection except that I was asked to give a valuation of the property and I simply supposed it was an insurance valuation for the insurance man and I answered it to the best of my ability and typed it and signed it. Q. Who paid you for the certificate or for this statement? A. I didn't ask anybody anything for that. I just made that statement thinking it was for the insurance company.''

It thus appears that Mr. Saunders was not aware of the function he was supposed to perform in connection with his examination of the building. He did not know that he had been "designated" to determine whether the damage amounted to 50 per cent of the "fair value" of the premises just prior to the fire. His report stated merely that the building was damaged "75%." This could be taken as meaning that the labor and material required for restoration would amount to 75 per cent of the original labor and materials put into the building. It does not amount to a decision that the cost of restoration would amount to 50 per cent of the "fair value" immediately prior to the damage. An examination of Mr. Saunders' testimony discloses that he steadfastly refused to pose as an expert as to the "fair value" immediately prior to the fire; and although the trial court ultimately held that he was qualified to testify as to such value, the witness at one time said, "I think that is a real estate man's job. . . . I can tell you the reasonable cost of replacing the building or the reasonable cost of rebuilding the building new, but what some man should conclude he should pay for the building and pay an inflation price, why those things are changing too fast for the architect to tell."

As was stated by the trial judge, "it is not a question of percentage of *destruction* but the percentage of *value*." True, under the terms of paragraph 16, defendant could not complain of the decision of a "responsible, disinterested and experienced" architect (and there is no question as to Mr. Saunders' qualifications in that regard); but when the plaintiffs themselves show by the testimony of their architect that he was not informed of the purpose for which he was appraising the damage and did not determine the damage in terms of the percentage of the fair reasonable value of the property before the fire, and did not at any time have an opinion as to the fair reasonable value of the property before the fire, it must be held that the trial court correctly concluded that plaintiffs had failed to prove their right to a termination of the lease under the last sentence of paragraph 16.

■ Our decision on this point disposes of the case. So far as the question of whether in fact the premises actually were damaged more than 50 per cent of their fair reasonable value is concerned, the evidence was conflicting, and in accordance with well-established rules, the finding of the trial court on this point cannot be disturbed. The contention that

the court erred in admitting evidence by defendants as to the extent of damage is without merit. Plaintiffs' complaint was based on the charge that the damage exceeded 50 per cent; they did not by their complaint rely upon compliance with the provisions of the last sentence of paragraph 16 requiring the designation of an architect, but stood upon the assertion that the damage exceeded 50 per cent and would require more than 30 working days to repair. Having tendered this issue, they may not complain that evidence was admitted thereon.

Although not necessary to this decision, it may well be doubted whether plaintiffs' complaint stated a cause of action, in that it failed to set forth a compliance with the provisions of the lease requiring the designation of an architect. But in any event, the finding of the trial court that the lease was not terminated under the provisions of paragraph 16 thereof finds ample support in the evidence.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.