Filed 10/12/22 Certified for Publication 11/4/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| BILLY ROE, a Minor, etc., et al., | |
| Plaintiffs and Appellants, | E075092 |
| v. | (Super.Ct.No. CIVDS1904175) |
| HESPERIA UNIFIED SCHOOL DISTRICT, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Wilfred J. Schneider, Jr., Judge. Affirmed in part, reversed in part with directions.

The Matiasic Firm, Paul A. Matiasic, Hannah E. Mohr; Esner, Chang & Boyer, Holly N. Boyer and Kathleen J. Becket for Plaintiffs and Appellants.

Cummings, McClorey, Davis, Acho & Associates and Ryan D. Miller for Defendant and Respondent.

1

Plaintiffs Billy Roe, David Roe, and Charlie Roe appeal from a judgment of dismissal following an order sustaining without leave to amend a demurrer filed by defendant Hesperia Unified School District (the District) to plaintiffs' third amended complaint.[1]  We affirm in part and reverse in part.

BACKGROUND

"This case comes to us at the demurrer stage, so for present purposes we assume the truth of the allegations in the" operative pleading.  (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209 (*Brown*).)

From August 2018 through January 2019, plaintiffs were six-year-old first grade students who attended Maple Elementary School (Maple) within the District.  The District receives financial assistance from the federal government.

Pedro Martinez worked at Maple as a janitor and had worked there since 2005. Martinez's position as a janitor did not require him to have any one-on-one contact with the students.

Martinez engaged in a variety of activities with the students that plaintiffs characterize as "'grooming' activities" that were "designed to lure minor students, including [p]laintiffs, into a false sense of security around him."  Martinez befriended young boys, gave plaintiffs sweet treats, showed plaintiffs video games on YouTube, showed plaintiffs videos of Mickey Mouse, referred to his penis to plaintiffs as "'Mickey

---

[1]     In the opening brief, appellants mistakenly refer to the minor plaintiff David Roe as Luke Roe.  According to the allegations in the third amended complaint, Luke is David's father and guardian ad litem.

2

Mouse'" and/or a "'taser,'" had plaintiffs sit on his lap, and referred to himself to plaintiffs as their friend, "'grandpa,'" and/or "'Mr. Quarters.'" Plaintiffs allege that numerous employees of the District who were mandated reporters under the Child Abuse and Neglect Reporting Act (CANRA), Penal Code section 11164 et seq., including a school "principal/school district director," another school principal, and an assistant principal, witnessed Martinez's behavior and did not report it to school officials or to law enforcement, in violation of the District's policies. Those witnesses did nothing to prevent the behavior from recurring.

Plaintiffs sat on Martinez's lap in and around the school cafeteria. Numerous employees of the District who worked in the cafeteria witnessed that conduct.

Every school day between August 2018 and January 2019, Martinez lured plaintiffs individually or in groups of boys into empty classrooms or bathrooms during recess, lunch break, and other times in the school day. He often lured plaintiffs from the cafeteria into empty classrooms or bathrooms by offering them sweet treats. Martinez's interactions with plaintiffs in the cafeteria were witnessed by numerous employees, including cafeteria workers, lunch break monitors, and teachers. Martinez would then lead the first-grade boys across campus individually or in groups into the empty rooms. Martinez escorted plaintiffs to those empty rooms in "plain view" of employees of the District, including a school principal and school district director, another school principal, an assistant principal, and two first grade teachers. No District employee intervened,

3

investigated, or reported what they observed concerning Martinez's interactions with plaintiffs.

Several times in the fall of 2018 a specific food service worker saw Martinez escort "students from the cafeteria area to their classrooms under the guise of 'helping the students retrieve their lunch money.'" Another employee witnessed Martinez meeting with students at portable classrooms on campus. Charlie "was noted to be missing from the school cafeteria on at least four different occasions."

When in the empty rooms, Martinez forced plaintiffs to perform oral sex on him and then forced plaintiffs to remove their pants and to lie face down on the ground, where Martinez would sodomize them. Martinez showed plaintiffs video recordings of himself sodomizing and otherwise sexually assaulting other young boys. He told plaintiffs that these other young boys also were "'learning how' to engage in this type of sexual behavior." Martinez often "concluded these abusive encounters by forcing the boys to physically fight each other, in an effort to shift any blame surrounding bruises or physical marks of abuse on [p]laintiffs away from himself, instead chalking it up to young boys roughhousing with each other." Martinez threatened to hurt plaintiffs if they told anybody about the abuse.

On numerous occasions, District employees, including two named first grade teachers, noticed that plaintiffs were missing from their classrooms "during class hours for inordinate amounts of time," sometimes for up to 20 or 30 minutes. During those periods, plaintiffs were being abused by Martinez elsewhere on campus. The teachers

4

and other employees did not investigate or report plaintiffs' absences from their classrooms. Instead, in September 2018, plaintiffs' teachers reported the absences to plaintiffs' parents and guardians and told them that the children's behavior needed to change.

The District's written policy forbids any form of sexual harassment of students by employees. Students are encouraged to notify staff immediately of any incidents of harassment. The policy further provides that any school staff who witness incidents of harassment are required to intervene to stop the harassment. The District has a training guide addressing the need for staff to maintain professional boundaries with students. The guide provides that "[m]aintaining personal, professional and protective boundaries is crucial for educational professionals working in [the] schools." The policy delineates that "'unacceptable behaviors'" include "'[b]eing along [*sic*] in a room with a student with the door closed'" and "'engaging in any type of physical contact with a student in a private situation.'" (Italics omitted.) The District has training guidelines that describe indicators of physical and sexual abuse and sexual exploitation. These indicators include "'questionable bruises on buttocks,' 'going missing for periods of time,' 'having mood swings and changes in temperament,' 'engaging in highly sexualized play that is different from age-appropriate form of exploration,' [and] 'bizarre or unusual sexual behavior or knowledge.'" (Boldface & underlining omitted.)

As early as September 2018, plaintiffs' parents began noticing "unusual behavior" and signs in their children, including engaging in sexually inappropriate conduct with

classmates and at home, asking sexually provocative questions and making sexually provocative comments, urinating at inappropriate times and places including on each other, and displaying "[u]nusual interest and curiosity in" Mickey Mouse and tasers. In addition, in December 2018, Charlie's parents or guardians noticed bruising on his buttocks.

Beginning in September and October 2018 and then again in December 2018, plaintiffs' parents or guardians "made multiple in-person and telephonic complaints/reports" to District employees in which they communicated to staff about the behavior they were witnessing in plaintiffs. One plaintiff's parent asked the student's teacher about tasers and Martinez's "unusual use of the term 'Mickey Mouse.'" That "teacher was dismissive of the young boy's questions." Charlie's grandmother reported the "troubling signs and behaviors" to numerous District employees, including Charlie's teacher. Billy's mother complained in person to Maple employees. Billy's mother was once instructed by an assistant to leave her contact number for the school psychologist, which Billy's mother did. The psychologist never contacted Billy's mother, and neither did anyone else from the school office. In December 2018, Billy's mother reported "her concerns and received an unconcerned, dismissive phone call" from Billy's teacher.

None of plaintiffs' parents was informed of or provided with relevant complaint forms, including form E 5145.7, which is entitled "'Discrimination, Harassment, Bullying, or Intimidation Complaint Form.'" According to the District's policy, that form should have been provided to parents "on precisely occasions such as the ones

6

detailed" in the third amended complaint. According to the form, it obligates the District to investigate any allegations made and to take appropriate disciplinary action.

In June 2018, the San Bernardino County grand jury issued a report entitled "'Hesperia Unified School District Sexual Harassment Policy and Procedures,'" which resulted from an investigation that ensued after several student-on-student incidents. The grand jury's findings were communicated directly to the District. Those findings included that employees of the District received no training on the elements of sexual battery, the District had "a narrower definition of sexual battery than law enforcement," the District's explanation of its complaint and grievance procedures differed from accounts given to the grand jury by parents, and the parents were not provided a copy of the investigative report as they should have been and were not advised of their right to appeal. The District's risk management director admitted that the District knew of those findings. The grand jury made other recommendations, which the District did not follow.

In January 2019, the People charged Martinez with numerous felonies involving his alleged sexual abuse of minors.

In February 2019, plaintiffs filed a lawsuit against the District and Martinez, alleging numerous claims arising from Martinez's alleged sexual abuse of plaintiffs. Of the 12 causes of action in the operative third amended complaint, eight are alleged against the District: (1) negligence in supervising plaintiffs and Martinez, in failing to maintain professional boundaries between staff and students, and in monitoring classroom usage during breaks and lunch (first cause of action), (2) negligent hiring and

retention of Martinez (second cause of action), (3) negligent supervision of plaintiffs and Martinez, and negligent failure to warn, train, or investigate (third cause of action), (4) negligence per se (eighth cause of action), (5) violation of the Unruh Civil Rights Act, Civil Code section 51 et seq. (ninth cause of action), (6) violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq. (10th cause of action), (7) failure to perform mandatory duties under CANRA (11th cause of action), and (8) sex discrimination in the education setting in violation of Education Code section 220, et seq. (12th cause of action).

The District demurred to all of the causes of action against it in the third amended complaint. Regarding all three of the negligence causes of action, the District argued that plaintiffs failed to allege facts "establishing that [the] District knew of any prior acts of sexual abuse by Martinez and/or that [the] District had actual knowledge that Martinez was abusing [p]laintiffs so as to impose liability upon the District."

The trial court was persuaded by that argument and concluded that plaintiffs did not adequately plead a negligence cause of action against the District, because plaintiffs failed to state any facts "establishing that [the] District knew of any prior acts of sexual abuse by Martinez and/or that the District had actual or constructive knowledge that Martinez was abusing [p]laintiffs so as to impose liability upon [the] District." The trial court appears to have dismissed the claims under Title IX and Education Code section 220 for the same reasons, but the court mistakenly referred to those claims as the 11th and 13th causes of action, using the numbering from the second amended complaint. The

8

court sustained the demurrer to the ninth cause of action (violation of the Unruh Civil Rights Act) on the ground that it had previously sustained the demurrer to that cause of action in the second amended complaint without leave to amend. For the negligence per se and failure to perform mandatory duties claims (eighth and 11th causes of action), the court concluded that plaintiffs failed to state a claim because they did not allege any facts demonstrating that any of the "District's employees actually knew or suspected that Martinez was sexually abusing [p]laintiffs or any other students." The court mistakenly referred to the failure to perform mandatory duties cause of action as the 12th cause of action, again using the numbering from the second amended complaint.

Plaintiffs moved for reconsideration, arguing that the trial court's order revealed that it had relied on the second amended complaint when ruling on the District's demurrer to the third amended complaint and that the District had improperly failed to notify them of a related action by a classmate of plaintiffs alleging that Martinez had sexually abused her. In support of the argument that the trial court had mistakenly relied on the second amended complaint and not the third amended complaint in making its ruling, plaintiffs pointed out that (1) the court made multiple references to a 13th cause of action, but the third amended complaint, unlike the second amended complaint, contained only 12 causes of action; (2) the court sustained the District's demurrer without leave to amend as to the concealment claim, which was the ninth cause of action in the second amended complaint but was not included in the third amended complaint at all; (3) the court erroneously referred to the cause of action for failure to perform mandatory duties

9

as the 12th cause of action, using the numbering from the second amended complaint; and (4) the court stated that plaintiffs failed to allege that any District employees witnessed Martinez taking plaintiffs into empty classrooms or restrooms, but the third amended complaint did include such allegations.

One month after plaintiffs sought reconsideration, the trial court entered judgment against plaintiffs. The trial court thereafter denied the motion for reconsideration, concluding that it lacked jurisdiction to consider the motion.[2]

DISCUSSION[3]

A. *Standard of Review*

On review of an order sustaining a demurrer, "we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. We may

---

[2]    The trial court did lose jurisdiction to rule on plaintiffs' motion for reconsideration once the court entered judgment. (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 182.) However, having reviewed the motion, we agree for all of the reasons explained in that motion that it appears that the trial court mistakenly considered the second amended complaint when ruling on the District's demurrer to the third amended complaint. The court never explained why it did not rule on the motion for one month and then entered judgment with the motion still pending.

[3]    Plaintiffs request that we take judicial notice of a complaint filed in June 2020 by another Maple student who alleges that in August 2016 Martinez sexually abused her in one of the school's bathrooms. That plaintiff also alleges that in that same month her parents reported the alleged assault to Maple's principal and assistant principal. We grant plaintiffs' request (Evid. Code, §§ 452, subd. (d), 459, subd. (a)) because the complaint is relevant to plaintiffs' argument concerning allegations they could add in an amended pleading, if necessary (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 825 ["Any matter to be judicially noticed must be relevant to a material issue"]). We judicially notice the existence of the pleading and not the truth of the matters contained therein. (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 836.) In that vein, we also deny the District's request that we take

10

also consider matters subject to judicial notice." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346 (*State Hospitals*); *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) Moreover, to state a claim """"against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity."""" (*Sipple v. City of Howard* (2014) 225 Cal.App.4th 349, 362.) To survive a demurrer, however, even against a governmental entity such as a public school district, "the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 (*C.A.*).) "We review a ruling sustaining a demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law." (*Abatti v. Imperial Irrigation District* (2020) 52 Cal.App.5th 236, 294.)

We review for abuse of discretion the trial court's denial of leave to amend. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) We determine whether there is a reasonable probability that the defect could be cured by amendment. (*Ibid.*) The trial court abuses its discretion if an amendment would cure the defect. (*Ibid.*) "The appellant has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action. [Citation.] An appellant can meet this burden by identifying new facts

---

judicial notice of other documents that purportedly tend to disprove the allegations in the other lawsuit. Whether the allegations can be proven in the other lawsuit or in this lawsuit is not a matter subject to resolution on demurrer, so those documents are irrelevant to the present appeal.

or theories on appeal." (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004; Code Civ. Proc., § 472c, subd. (a).)

B. *Negligence Causes of Action*

Plaintiffs contend that they had a special relationship with the District, so the District had a duty to protect them from foreseeable risks of harm, including sexual abuse perpetrated by a District employee. Plaintiffs argue that they were not required to plead facts demonstrating that the District had actual knowledge of past sexual abuse by Martinez and that they otherwise pled sufficient facts to state negligence causes of action against the District. We agree with plaintiffs on all of those points.

1. *Actual Knowledge*

In the trial court, the District argued that (1) plaintiffs could not state a claim for negligence unless they alleged facts showing "that [the] District knew of any prior acts of sexual abuse by Martinez" or "that [the] District had actual knowledge that Martinez was abusing [p]laintiffs," and (2) the third amended complaint contained no such allegations. The trial court agreed. On appeal, the District frames this argument about actual knowledge as showing that plaintiffs failed to allege sufficient facts to establish the duty element of their negligence claims. Plaintiffs argue that the District's argument and the trial court's ruling adopting the argument are meritless and that the third amended complaint adequately pled negligence claims against the District. We agree.

Plaintiffs bring three negligence causes of action against the District, predicated on several theories of liability—one for negligent hiring and retention of Martinez, one for

12

failure to adequately supervise plaintiffs, and one for failure to adequately supervise

Martinez. In any negligence action, a plaintiff must demonstrate the existence of a legal

duty of care, a breach of that duty, and proximate causation linking the breach with

resulting injury.**4** (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142.) Whether such

a duty exists is a question of law, which we independently review. (*Doe v. Lawndale*

*Elementary School District* (2021) 72 Cal.App.5th 113, 125 (*Lawndale*).)

In general, there exists "no duty to protect others from the conduct of third

parties." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607,

627 (*Regents*); *Brown*, *supra*, 11 Cal.5th at p. 215.) But one exception to that rule exists

when a "person is in what the law calls a 'special relationship' with either the victim or

the person who created the harm." (*Brown*, at p. 215.) In *C.A.*, our Supreme Court held

that such a special relationship exists between a school district and its employees and

students. (*C.A.*, *supra*, 53 Cal.4th at p. 869.) A school district and its personnel owe

students "the duty to use reasonable measures to protect [them] from foreseeable injury at

the hands of third parties acting negligently or intentionally," including "injuries to a

student resulting from a teacher's sexual assault." (*Id.* at p. 870.) Because sexually

abusing a student is not within the course and scope of employment of a school district

employee, a school district is not vicariously liable for the abuse itself but may be liable

**4** All governmental tort liability is controlled by the Government Claims Act, Government Code § 801 et seq. (Undesignated statutory references are to this code.) In general, "'an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b)).'" (*C.A.*, *supra*, 53 Cal.4th at p. 868.)

for such things as negligent hiring, retention, or supervision.  (*Id.* at pp. 865, 879; *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441, 447.)

The District argues that despite this special relationship and the resultant duties stemming from it, the District "cannot be held liable for the sexual acts of its custodian without actual knowledge of Martinez's propensity to harm students."  We reject this argument.  It is not supported by any applicable precedent involving school district liability in these circumstances.

As the Supreme Court held in *C.A.*, "a public school district may be vicariously liable under section 815.2 for the negligence of administrators or supervisors in hiring, supervising and retaining a school employee who sexually harasses and abuses a student." (*C.A.*, *supra*, 53 Cal.4th at p. 879.)  The Supreme Court explained that a school district is liable for the negligence of supervisory employees who "knew or should have known of [a school employee's] dangerous propensities, but nevertheless hired, retained and failed to properly supervise" the employee.  (*Id.* at p. 875.)  A school district's administrators and other supervisory employees are responsible for "taking reasonable measures to guard pupils against harassment and abuse from foreseeable sources, including any teachers or counselors they know or have reason to know are prone to such abuse."  (*Id.* at p. 871.)

The negligence standard articulated by *C.A.* for hiring, supervising, or retaining an assaultive employee—"knew or should have known" (*C.A.*, *supra*, 53 Cal.4th at pp. 871) or "know or have reason to know" (*id.* at p. 875)—thus imposes liability on a school

14

district on the basis of supervisory personnel's constructive knowledge that an employee is prone to harm students. Constructive knowledge is knowledge that "may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.'" (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206-1207.)

Despite *C.A.*'s articulation of the constructive knowledge standard, the District maintains that it "cannot be held liable for the sexual acts of its custodian without actual knowledge of Martinez's propensity to harm students." The argument is meritless.

In *Lawndale*, another Court of Appeal recently rejected a different school district's argument that actual knowledge of an employee's propensity to sexually assault students is required to establish a school district's negligence in hiring, supervising, and retaining the employee who committed such an assault. (*Lawndale*, *supra*, 72 Cal.App.5th at p. 124.) After analyzing case law pertaining to school district liability, *Lawndale* concluded that "consistent with California negligence law," "school administrators have a duty to protect students from sexual abuse by school employees, even if the school does not have actual knowledge of a particular employee's history of committing, or propensity to commit, such abuse." (*Id.* at p. 119.) *Lawndale* explained that public policy considerations favor "imposing a duty on school districts to take reasonable measures to identify and respond to potential misconduct, even before a district knows a specific employee has previously engaged in sexual misconduct" because protecting "children from sexual abuse [is] '[o]ne of society's highest priorities.'" (*Id.* at p. 135.)

15

We agree with *Lawndale*'s analysis and conclusion. We therefore conclude that the trial court erred by ruling that plaintiffs' negligence claims failed because they did not allege that the District had actual knowledge that Martinez had previously sexually abused minors or that he had a propensity to do so.

The cases the District relies on to support applying an actual knowledge standard are all inapposite. All of those cases adopted the actual knowledge standard announced by another appellate court in *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1080 (*Romero*). (See *Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 682; *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 392-398; *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889, 902-903; *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 152-154, 156-157; see also *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 395-397, disapproved on another ground in *Brown*, *supra*, 11 Cal.5th at p. 222, fn. 9.) None of those cases involves a school district. (See *Doe*, *supra*, at p. 679 [county social services agency and private foster care agency]; *J.L.*, *supra*, at p. 391 [a nonprofit corporation providing licensed family childcare services]; *Z.V.*, *supra*, at p. 892 [county social services agency]; *Margaret W.*, *supra*, at p. 145 [friend's house]; *Juarez*, *supra*, at p. 408 [national youth organization].)

Moreover, the rule announced in *Romero* is inapplicable under the circumstances of this case.[5]  In *Romero*, a teenage boy sexually assaulted a younger teenage girl while both were visiting another minor's home.  (*Romero*, *supra*, 89 Cal.App.4th at pp. 1072-1075.)  The victim sued the host's parents, arguing that they negligently failed to supervise the victim and the perpetrator while they were in the host's home.  (*Id.* at p. 1075.)  The Court of Appeal concluded that the parents were in a special relationship with the perpetrator and the victim because of their status as invitees in the host's home.  (*Id.* at p. 1081.)  The court nevertheless concluded that "the question of whether the defendant owed a duty of reasonable care to the injured minor depends on whether the assailant minor's conduct was *reasonably foreseeable*" and "that conduct will be deemed to have been reasonably foreseeable only if the defendant had *actual knowledge* of the assaultive propensities of the teenage assailant."  (*Ibid.*)

*Romero* explained that applying a constructive knowledge standard to the facts presented in that case would impose liability on parents who invite into their homes minors they do not know intimately.  (*Romero*, *supra*, 89 Cal.App.4th at p. 1083.)  Parents would be required to conduct investigations of their children's minor guests and "would be hampered in their investigative efforts by legitimate and well-established rules of confidentiality regarding juvenile matters."  (*Ibid.*)  To minimize the risk of liability,

---

**5**    The District also cites numerous cases from federal district courts for propositions involving application of state law negligence principles.  "[A] federal court's interpretation of California state law is not binding."  (*People v. Alorica, Inc.* (2022) 77 Cal.App.5th 60, 67, fn. 2; *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 764.)

parents "would be required to continually and personally provide the closest supervision during the minor's entire visit." (*Ibid.*)

Other Courts of Appeal have refused to extend *Romero*'s actual knowledge standard in cases involving school district liability arising from a district's supervisory responsibilities. (See *M.W. v. Panama Buena Vista Union School District* (2003) 110 Cal.App.4th 508, 524; *Lawndale*, *supra*, 72 Cal.App.5th at pp. 129-130; see also *J.H. v. Los Angeles Unified School District* (2010) 183 Cal.App.4th 123, 146 & fn. 11.) *M.W.* explained that *Romero* does not apply to school districts as follows: "The public policy reasons surrounding [this] rule do not exist in the context of a school district's supervisory responsibilities. Simply put, the school grounds provide a different setting than an adult's home. And there are differing public policy concerns related to the responsibilities of school districts that provide mandatory education as compared to adults who invite children into their home on a voluntary basis." (*M.W.*, *supra*, at p. 524.) We agree with that analysis and also conclude that *Romero*'s actual knowledge standard does not apply in this case involving a school district's liability for the negligent supervision, hiring, and retention of an employee alleged to have sexually abused minor students.[6]

---

[6] The District's reliance on *Alma W. v. Oakland Unified School District* (1981) 123 Cal.App.3d 133 is similarly unhelpful because that case involved a minor student's attempt to hold a school district vicariously liable for a custodial employee's sexual molestation and rape of the plaintiff. (*Id.* at pp. 138-140.) Here, plaintiffs do not similarly seek to impose vicarious liability on the District for the actual assaults.

For all of these reasons, we conclude that the trial court erred by ruling that plaintiffs' negligence claims against the District failed because plaintiffs did not allege that the District had actual knowledge that Martinez had previously sexually abused minors or had a propensity to do so.[7]

2. *Constructive Knowledge*

The District argues that the allegations are insufficient to state a negligence claim against the District even under a constructive knowledge standard. We disagree.

In determining whether plaintiffs have stated sufficient facts to support their claim for negligent hiring, supervision, and retention of Martinez, we ask whether plaintiffs have alleged facts demonstrating that "'supervisory or administrative personnel who allegedly knew, or should have known,'" or had reason to know "of the foreseeable risk to students of sexual abuse by an employee and nevertheless hired, retained, and/or inadequately supervised that employee." (*D.Z. v. Los Angeles Unified School District* (2019) 35 Cal.App.5th 210, 223; *C.A.*, *supra*, 53 Cal.4th at pp. 865, 871, 875.) With respect to plaintiffs' claim that the District negligently failed to supervise plaintiffs, plaintiffs must allege facts demonstrating that school personnel failed to exercise

---

[7] Even if plaintiffs were required to show that the District had actual knowledge that Martinez had assaultive propensities or had previously sexually abused a minor, plaintiffs could amend their pleading to satisfy such a requirement. (Code Civ. Proc., § 472c, subd. (a).) On appeal, plaintiffs proffer that they could amend the pleading to include the following allegations, which they learned about from a lawsuit that was filed approximately six months after the judgment: In 2016, two years before Martinez allegedly abused plaintiffs, Martinez allegedly sexually abused another first grade student of Maple. In 2016, that student's parents reported the alleged abuse to Maple's principal and assistant principal. Those added allegations would satisfy the actual knowledge requirement proposed by the District and erroneously applied by the trial court.

19

""ordinary prudence."" (*C.A.*, at p. 869.) "'Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision.'" (*Ibid.*)

Plaintiffs allege that when they were six years old they routinely were missing from their first grade classrooms, sometimes up to 30 minutes at a time. Plaintiffs' teachers were aware of the absences and did not investigate why plaintiffs were missing so frequently. In addition, numerous District employees, including two school principals (one of whom is also a school district director), an assistant principal, and plaintiffs' teachers, saw Martinez accompany plaintiffs individually or in groups across campus during breaks to empty classrooms or restrooms. The same employees are alleged to have seen plaintiffs sitting on Martinez's lap. Plaintiffs further allege that as a janitor Martinez's role did not require him to have any one-on-one contact with any students. Moreover, plaintiffs allege that District policy dictated that it was unacceptable for Martinez to spend any time alone with students.

Those allegations are sufficient to state a claim that the District negligently failed to supervise plaintiffs. Assuming the allegations are true, they show that the District did not effectively account for plaintiffs' whereabouts during class or breaks and allowed plaintiffs to spend a large amount of time alone and in close physical contact with an employee whose job duties did not include any contact with students. That is sufficient to show ineffective supervision and hence a lack of ordinary care. (See *C.A.*, *supra*, 53 Cal.4th at p. 869.)

20

The District argues that the cause of action for inadequate supervision of plaintiffs fails because plaintiffs do not allege that they were ever unsupervised. Rather, the District argues that because plaintiffs were allegedly with Martinez whenever they were not with teachers or other school personnel, plaintiffs were always supervised, either by Martinez or by some other adult. The argument is meritless for several reasons. First, the District cites no authority for the proposition that minor students must allege that they were without any adult or staff supervision in order to state claim for negligent supervision of those students. We are aware of none. Second, the allegations do not show that plaintiffs were under Martinez's supervision. Contact with students was allegedly not part of his job, and there is no allegation that the District ever directed him to supervise plaintiffs or any other students. Third, if the District did direct Martinez to supervise plaintiffs, and while supervising them he sexually abused them as alleged, then those facts, in the context of the other facts alleged here, would be sufficient to state a claim for negligent supervision of plaintiffs. (*C.A.*, *supra*, 53 Cal.4th at p. 869.)

The allegations are also sufficient to state a claim for negligent supervision or retention of Martinez. Plaintiffs allege that Martinez had plaintiffs sit on his lap and accompanied them on a daily basis to empty rooms on campus when his job did not require him to have any one-on-one contact with students. From those allegations, the District had reason to know or should have known that Martinez posed a foreseeable risk of sexually abusing plaintiffs. In addition, given that Martinez repeatedly violated school policy by being alone with students in rooms with closed doors and having physical

21

contact with students, the allegations are sufficient to state a claim for negligent retention of Martinez.

We also reject the District's argument that plaintiffs failed to allege facts that "put an administrator, like a school Principal or Assistant Principal, on notice of dangerous propensities." Plaintiffs allege that two principals, one of whom was also a school district director, and an assistant principal witnessed plaintiffs sitting on Martinez's lap and Martinez escorting plaintiffs across campus to empty rooms.

Much of the District's argument concerning the sufficiency of the allegations is based on the District's contention that the allegations are false or on the District's alternative interpretation of the facts. For example, the District contends that in Martinez's position as a school janitor he "would be expected to interact with children." Similarly, the District claims that "janitors fairly regularly take students to unlock a classroom for a forgotten lunch or backpack," so Martinez's accompaniment of students across campus would not put the District on notice that he could be sexually abusing students. Both arguments directly contradict plaintiffs' allegations. We do not resolve factual disputes at this stage of the proceeding. "It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which [the plaintiff] describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213, superseded by statute on another ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.) "It

'admits the truth of all material factual allegations in the complaint . . . ; the question of [the] plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court.'" (*Committee on Children's Television Inc. v. General Foods Corp*, *supra*, at pp. 213-214.) We therefore reject as irrelevant all of the District's arguments attacking the truth of the allegations.

We also reject the District's contention that "sitting on a lap does not suggest sexual behavior, for example in assisting a child [to] tie a shoe or to console a child. To say otherwise would make virtually every parent a suspect of child abuse." First, plaintiffs do not allege that Martinez was assisting any of them in tying their shoelaces or was consoling them when he had them sit on his lap. Plaintiffs instead allege that Martinez had no reason to have any contact with them, and we accept plaintiffs' allegations as true at this stage of the proceeding. (*State Hospitals*, *supra*, 61 Cal.4th at p. 346.) Second, we also do not determine at this stage "what inferences should be drawn where competing inferences are possible." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635.) Regardless of whether there are alternative innocent inferences that could be drawn from Martinez having numerous six-year old students sit on his lap, the fact supports a reasonable inference that District personnel should have suspected that Martinez was sexually abusing plaintiffs. Third, we do not view the allegation in isolation. We instead "give the complaint a reasonable interpretation by reading it as a whole and with all its parts in their context." (*Consumer Cause, Inc. v. Weider Nutrition Internat., Inc.* (2001) 92 Cal.App.4th 363, 367.) As we have explained,

23

when viewed as a totality, the factual allegations are sufficient to state a claim that District personnel should have known that there was a foreseeable risk that Martinez was sexually abusing plaintiffs.

For all of these reasons, we conclude that plaintiffs have sufficiently stated claims against the District based on the District's negligent failure to supervise plaintiffs and Martinez and its retention of Martinez.

C. *Negligence Per Se and CANRA*

Plaintiffs argue that the trial court erred by concluding that their claims under CANRA and for negligence per se failed because plaintiffs did not allege "facts establishing that any of [the] District's employees actually knew or suspected that Martinez was sexually abusing [p]laintiffs or any other students." We agree.

CANRA requires mandated reporters, including teachers and other specified school employees, "to make a report to a law enforcement agency or a county welfare department 'whenever the mandated reporter, in [the mandated reporter's] professional capacity or within the scope of [the mandated reporter's] employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect.'" (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 186; Pen. Code, §§ 11166, subd. (a), 11165.7, subd. (a)(1)-(4).) "A mandated reporter has a 'reasonable suspicion' when 'it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect

24

child abuse or neglect. "Reasonable suspicion" does not require certainty that child abuse or neglect has occurred nor does it require a specific medical indication of child abuse or neglect; any "reasonable suspicion" is sufficient.'" (*B.H.*, *supra*, at p. 186; Pen. Code, § 11166, subd. (a)(1).) Failure to make the required report constitutes a misdemeanor. (Pen. Code, § 11166, subd. (c).) In addition, a failure to make such a report may give rise to a claim of negligence per se when a breach of the duty to report causes injury. (*Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1188-1189, disapproved on another ground in *B.H.*, at p. 188, fn. 6; *B.H.*, at p. 188, fn. 6.)

It would be objectively reasonable for persons in the position of Maple's employees who allegedly saw Martinez, a school janitor, have numerous six-year-old students sit on his lap and whom he also routinely escorted across campus to empty rooms "to entertain a suspicion" that Martinez could be sexually abusing plaintiffs. (Pen. Code, § 11166, subd. (a)(1).) We consequently conclude that the trial court erred by dismissing plaintiffs' causes of action for negligence per se and violation of CANRA.

D. *Title IX and Education Code Section 220*

Plaintiffs contend that the trial court erred by dismissing their sex discrimination claims under Title IX and Education Code section 220. We disagree.

"Title IX prohibits sex discrimination under any education program or activity receiving federal funds." (*Donovan v. Poway Unified School District* (2008) 167 Cal.App.4th 567, 598 (*Donovan*).) The statute provides in part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

25

subjected to discrimination under any education program or activity receiving Federal financial assistance." (20 U.S.C. § 1681, subd. (a).) An individual injured by a violation of Title IX may bring a civil action to recover money damages. (*Gebser v. Lago Vista Indep. School Dist.* (1998) 524 U.S. 274, 281 (*Gebser*).)

Similarly, Education Code section 220 provides: "No person shall be subjected to discrimination on the basis of . . . gender . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid." (Ed. Code, § 220.)

Under Title IX, a school district can be held liable for damages when a teacher sexually harasses a student. (*Franklin v. Gwinnett County Public Schools* (1992) 503 U.S. 60, 74-75.) However, the district is not liable "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the [employee's] misconduct." (*Gebser*, *supra*, 524 U.S. at p. 277; see *id.* at p. 290.) The same standard applies for an action to recover money damages under Education Code section 220. (*Donovan*, *supra*, 167 Cal.App.4th at p. 605.)

Here, plaintiffs' allegations are insufficient to constitute actual notice of a violation of Title IX or Education Code section 220. Plaintiffs do not allege that any school district employee, let alone one with the requisite level of authority, actually knew that Martinez was sexually abusing plaintiffs or any other students. Contrary to plaintiffs' argument, none of the alleged reports or complaints plaintiffs' parents or

26

guardians made to school employees is sufficient to satisfy the actual knowledge requirement. Plaintiffs' parents or guardians reported that plaintiffs were engaging in sexually inappropriate conduct with their classmates and at home, making sexually provocative comments, asking sexually provocative questions, urinating at inappropriate times and in inappropriate locations, and were unusually interested in tasers and Mickey Mouse. None of those complaints involved Martinez. (*Gebser*, *supra*, 524 U.S. at p. 277; *Donovan*, *supra*, 167 Cal.App.4th at p. 605.)

Because the third amended complaint does not include any factual allegations demonstrating that any official with the authority to institute corrective actions had actual knowledge of Martinez's alleged sexual abuse of plaintiffs or any other students, we conclude that the trial court did not err by dismissing the claims under Title IX and Education Code section 220.[8]

We consequently affirm the trial court's dismissal without leave to amend of plaintiffs' claims alleging violations of Title IX and Education Code section 220.[9]

---

[8]     In their opening brief, plaintiffs did not argue that they should be granted leave to amend the Title IX or Education Code section 220 claims. We therefore do not address the issue. At oral argument, plaintiffs' counsel relied on federal cases holding that the actual notice requirement is not limited to misconduct involving the Title IX plaintiff (see, e.g., *Doe v. Sch. Bd.* (11th Cir. 2010) 604 F.3d 1248, 1257), so we should remand the matter to the trial court to allow plaintiffs leave to amend these claims. We decline to address the argument because plaintiffs did make it in their opening brief. (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098.)

[9]     Plaintiffs do not challenge the trial court's dismissal of the ninth cause of action alleging a violation of the Unruh Civil Rights Act.

27

DISPOSITION

The judgment of dismissal is reversed, the order sustaining the demurrer to the third amended complaint is vacated, and the trial court is directed to enter a new order sustaining the demurrer without leave to amend as to the causes of action under Title IX, Education Code section 220, and the Unruh Civil Rights Act but otherwise overruling the demurrer.  Plaintiffs shall recover their costs of appeal.

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

28

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| BILLY ROE, a Minor, etc., et al., | |
| Plaintiffs and Appellants, | E075092 |
| v. | (Super.Ct.No. CIVDS1904175) |
| HESPERIA UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

We have received the request pursuant to California Rules of Court, rule 8.1120(a), to publish the nonpublished opinion in this matter that was filed on October 12, 2022. Having reviewed the request, we conclude that the opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105(c).

We therefore grant the request and order that this opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). We consequently certify for publication the opinion filed in this matter on October 12, 2022.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.
RAPHAEL
J.

1